UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARVIN DURET                                          CIVIL ACTION

VERSUS                                                NO. 13-314-BAJ-RLB

COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISRATION

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 7, 2014.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARVIN DURET                                CIVIL ACTION

VERSUS                                         NO. 13-314-BAJ-RLB

COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISRATION

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Marvin Duret ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act and for medical assistance under Title XIX of the Social Security Act. (Tr. 132).[1] For the reasons assigned below, the Court recommends the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

## I.     PROCEDURAL HISTORY

On June 1, 2010 Plaintiff filed an application for SSI and medical assistance alleging a disability onset date of June 1, 2010. (Tr. 132-135). Plaintiff's application was initially denied on September 28, 2010, because the Commissioner found Plaintiff was not disabled as of June 1, 2010. (Tr. 68-78). The denial of Plaintiff's application stated that despite his "history of emotional problems and nervousness," which have been treated, the Plaintiff is able to "perform

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

simple jobs without complex instruction, and ones that do not involve closely working with others." (Tr. 76). Plaintiff then filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on December 2, 2010. (Tr. 82-84).

On May 10, 2011, the ALJ held a hearing in which Plaintiff, represented by counsel, appeared and testified. (Tr. 25-67). A vocational expert (VE), Beverly Majors, also testified at the hearing. (Tr. 52-58, 60-62). Through the ALJ, the Commissioner rendered an unfavorable decision on July 26, 2011, finding Plaintiff had not been under a disability from the alleged onset date of June 1, 2010 through the date of the decision. (Tr. 13-24). Plaintiff's request for review was denied by the Appeals Council on March 13, 2013. (Tr. 1-6). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden

shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In his decision, the ALJ first found Plaintiff had not engaged in substantial gainful activity from his amended alleged onset date of June 1, 2010. (Tr. 15). At step two, the ALJ determined Plaintiff's major depressive disorder and anxiety disorder, NOS, were severe impairments, and also found that the Plaintiff had no medically determinable physical impairment. (Tr. 15). At step three, the ALJ concluded Plaintiff did not meet any of the "listed impairments" contained in the Regulations. (Tr. 15-16). The ALJ then found Plaintiff "had the residual functional capacity to perform a full range of work at all exertional levels but with the

4

following nonexertional limitations: he is limited to simple work without detailed instructions and which does not involve working closely with others." (Tr. 16-19). At step four, the ALJ concluded that Plaintiff has no past relevant work, and that the transferability of job skills, therefore, is not an issue. (Tr. 19-20). At step five, the ALJ found that, after considering Plaintiff's age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 20-21). Ultimately, the ALJ determined Plaintiff had "not been under a disability, as defined by the Social Security Act, since June 1, 2010, the date the application was filed." (Tr. 21).

## IV. ASSIGNMENTS OF ERROR

Plaintiff contends the ALJ's decision "was not supported by substantial evidence in the case record, and the ALJ did not apply the proper legal standard to evaluate the evidence presented." (R. Doc. 10 at 11). In support of this contention, Plaintiff assigns two errors. (R. Doc. 10 at 3). First, the "ALJ failed to apply the proper legal standard to determine the credibility of the Plaintiff." (R. Doc. 10 at 4-6). Second, the "ALJ did not apply the correct legal standard in assessing Plaintiff's Residual Functional Capacity." (R. Doc. 10 at 7-11).

## V. DISCUSSION

### A. Credibility

The Administration's Regulations and Rulings require the ALJ to follow a two step-process and to provide specific reasons for credibility findings. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P, 1996 WL 374186, at *2; *see also* 20 C.F.R. § 404.1529. If so, the ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the

extent to which the symptoms limit the individual's ability to do basic work activities." SSR 97-7P, 1996 WL 374186, at *2. If the alleged degree of pain, symptoms and limitations is "not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 97-7P, 1996 WL 374186, at *2.

The Administration requires the decision to "contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P, 1996 WL 374186, at *4 (July 2, 1996). At the same time, "[p]rocedural perfection in administrative proceedings is not required" and remand will not be warranted "unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Failing to articulate specific reasons for discounting a claimant's credibility obviously results in some error. Nonetheless, that error is harmless where (1) the ALJ discusses the claimant's allegations and (2) substantial record evidence supports the credibility determination. *See, e.g.*, *Haywood v. Sullivan*, 888 F.2d 1463, 1469-70 (5th Cir. 1989) (failure to explain credibility findings was harmless error where decision summarized claimant's testimony and objective medical evidence and substantial evidence supported finding); *Story v. Astrue*, 294 F. App'x 883, 884 (5th Cir. 2008) (ALJ's consideration of subjective testimony "satisfied his obligation" to make specific credibility findings); *Salgado v. Astrue*, 271 F. App'x 456, 462-63 (5th Cir. 2008) (ALJ's previous discussion of claimant's allegations provided sufficient reasons for otherwise conclusory credibility finding).

According to Plaintiff, the ALJ's credibility determination was "a simple, conclusory statement" that fails to provide "specific reasons for his finding on credibility, supported by evidence in the case record" and was not "sufficiently specific to make clear to the plaintiff, and

6

to any subsequent reviewers, the weight that the ALJ gave to plaintiff's statement and the reasons for that weight." (R. Doc. 10 at 4). Plaintiff claims that the ALJ failed to identify and discuss numerous instances in the medical evidence supporting Plaintiff's credibility and did not follow the two-step process. (R. Doc. 10 at 4).

The Court has reviewed the ALJ's decision along with the record and finds Plaintiff's allegations of error without merit. First, the ALJ clearly followed the two-step analysis in assessing Plaintiff's credibility. The ALJ began his credibility assessment by explaining the two-step process required by the Regulations. (Tr. 17). The ALJ explained that he must first determine "whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 17). The ALJ found that this first determination had been satisfied with regard to some of Plaintiff's symptoms. (Tr. 18). The ALJ also explained that once the first step is satisfied, he must then "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (Tr. 17). The ALJ acknowledged he must make a credibility determination based on consideration of the entire case record "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence." (Tr. 17). Because of the inconsistencies between the degree of limitations alleged by Plaintiff and the objective medical evidence, the ALJ concluded that the second step in evaluating credibility was not satisfied because Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18).

Plaintiff alleges that the ALJ's credibility finding is "conclusory" simply by quoting the ALJ's actual conclusion for step two in the analysis.[2] That conclusion does not stand alone for the ALJ's analysis of the credibility of Plaintiff's statements regarding his limitations. As set forth below, the ALJ discussed the case record and explained the evidence he relied on in assessing Plaintiff's credibility. Therefore, there is no merit to Plaintiff's arguments that the ALJ failed to follow the Regulations or provide specific reasons for his credibility finding.

In concluding that Plaintiff's testimony regarding his symptoms was not credible, the ALJ first summarized the Plaintiff's testimony. At the administrative hearing, Plaintiff testified that he is depressed about his situation, unable to work or do anything, suffers side effects from his medications that leave him unable to perform daily tasks sometimes and leaves him inattentive, drowsy, and groggy. (Tr. 17, 34-37). Plaintiff further testified that he has had audio and visual hallucinations and when he went without his medication for two days he had enhanced anxiety attacks and paranoia. (Tr. 18,47-48). Plaintiff also testified that he does not have much contact with others and has trouble interacting with others. (Tr. 18, 37).

The ALJ then compared Plaintiff's testimony with other objective evidence in the record. The ALJ noted that Plaintiff has been treated at the Margaret Dumas Mental Health Center (MDMHC) since June 2010 for depression, anxiety, and panic attacks, and was prescribed the medications Prozac, Geodon, and hydroxyzine for these conditions. (Tr. 18, 204-278). The ALJ concluded that Plaintiff's MDMHC treatment records showed Plaintiff only had a moderate degree of symptoms and impairment caused by his mental illness. The evidence showed that Plaintiff's symptoms improved while he was on his medications. (Tr. 18-19, 215). The evidence also showed that where Plaintiff ran out of medications in March 2011, he experienced worsened

---

[2] Plaintiff quotes the following language: "[plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. Doc. 10 at 4 (quoting Tr. 18)).

8

symptoms such as nail biting and sleeplessness, but that those effects of being off of his medication did not reach the severe level claimed by Plaintiff. (Tr. 19, 48, 235). Furthermore, the ALJ noted that as earlier as August 4, 2010, Plaintiff was reporting that he was sleeping better on medication and Plaintiff denied audio and visual hallucinations, as well as having any homicidal or suicidal thoughts. (Tr. 18, 215, 244).

The ALJ also considered the opinions in the record by Dr. David Post, M.D., Plaintiff's treating physician at MDMHC. The ALJ noted that Dr. Post indicated that the Plaintiff was "Markedly Ill" on one of the records. (Tr. 19, 265). The ALJ concluded, however, that this opinion was not supported by any diagnostic tests, and was therefore only given weight to the determination that Plaintiff has a "severe" impairment (the step two conclusion). (Tr. 19). The ALJ considered Dr. Post's initial assessment of Plaintiff, in which he scored Plaintiff with a Global Assessment of Functioning (GAF) rating of 57. (Tr. 19, 212, 216, 278). A GAF rating between 51 and 60 indicates only "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* 34 (DSM-IV) (Michael B. First, M.D., et al. eds., 4th ed. 2000).

The ALJ also considered the opinions of Dr. Maxime Campbell-Flint, PhD, the consultative psychological examiner. In her August 13, 2010 assessment, Dr. Campbell-Flint scored Plaintiff with a GAF rating of 60. (Tr. 19, 199-201). The ALJ acknowledged that Dr. Campbell-Flint concluded that Plaintiff had deficiencies in his short-term memory, would have difficulty adjusting to changes, and would require assistance to understand and adhere to common practices in the workplace related to hazards and precautions" (Tr. 19, 201). Dr. Campbell-Flint also found Plaintiff to have normal concentration during the evaluation, he was

able to maintain pace during the evaluation, he demonstrated the ability to adhere to appropriate standards of social behavior, and that he was able to understand and follow directions. (Tr. 19, 201).

That no physician or other mental health source on the record states described Plaintiff as disabled or otherwise unable to work is further substantial evidence supporting the ALJ's conclusion that Plaintiff's subjective symptomology was not credible. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir.1989).

Plaintiff also argues that the objective medical evidence in the record substantiates Plaintiff's claim of complete disability, and that it was reversible error for the ALJ not to accept Plaintiff's testimony in light of this objective medical evidence. (R. Doc. 5 at 4-6). This is a misstatement of the law. To uphold the ALJ's decision, the Court must merely find that the decision is supported by substantial evidence. *Shalala*, 207 F.3d at 745. Substantial evidence in the record supports the ALJ's credibility determination that Plaintiff suffers no more than moderate mental limitations. (Tr. 16-19).

In short, the ALJ fully discussed Plaintiff's subjective testimony of his limitations, daily activities, and symptoms, and compared that testimony with the objective medical record. (Tr. 17-19). The ALJ set forth the contradictory evidence in support of his credibility finding, satisfying the requirement that his credibility decision contains "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P, 1996 WL 374186, at *4. To the extent the ALJ did not specifically identify which portions of Plaintiff's testimony he did not find credible, he nevertheless made it clear that he determined that Plaintiff "statements concerning the intensity, persistence and limiting effects of [his] symptons are not credible to the extent they are inconsistent" with the final RFC determination. Accordingly, the ALJ satisfied

his obligation to consider Plaintiff's alleged symptoms. *See Herron v. Halter*, 250 F.3d 744 (5th Cir. 2001) (unpublished table decision) (lack of specific findings was harmless error where ALJ detailed claimant's testimony and record evidence earlier in opinion and said testimony and record were considered at credibility stage).

The Court finds no reversible error in the ALJ's credibility determination.

### B. Residual Functional Capacity

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco*, 27 F.3d at 163-64. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

The ALJ assessed Plaintiff's RFC from July 2010 through July 2011. The ALJ concluded after "careful consideration of the entire record" that the Plaintiff has "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple work without detailed instructions and which does not involve working closely with others." (Tr. 16).

Plaintiff argues that based on the evidence in the record, including plaintiff's testimony at the administrative hearing, Plaintiff is not capable of this RFC and it was reversible error for the ALJ to conclude otherwise. (R. Doc. 10 at 7). More specifically, Plaintiff argues that the "ALJ failed to factor into his analysis of the plaintiff's RFC the functional limitations imposed on plaintiff's ability to engage in basic work activities as a consequence of *all* of his 'severe' impairments, including severe major depression disorder with psychotic features, anxiety disorder NOS with features of obsessive compulsive disorder, panic attacks, and trauma." (R. Doc. 10 at 7).[3]

The Court disagrees and finds that the substantial evidence supports the ALJ's RFC determination. As discussed above, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent" with the ALJ's RFC determination. Accordingly, the ALJ could disregard the Plaintiff's subjective symptomology to the extent it was inconsistent with the RFC under a proper exercise of his discretion as the finder of fact. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).

The objective medical record, as discussed by the ALJ in detail, reflects that the Plaintiff has been treated at the MDMHC since June 2010 for depression, anxiety, and panic attacks, and was prescribed medications for these conditions. (Tr. 18, 204-278). The ALJ noted that Plaintiff's symptoms improved while he was on his medications. (Tr. 18-19, 215). When Plaintiff stopped taking his medications in March 2011, he experienced sleeplessness and began biting his nails. (Tr. 19, 48, 235). After reviewing the MDMHC treatment records, the ALJ concluded that Plaintiff only had moderate mental limitations. As discussed above, the ALJ

---

[3] The ALJ actually concluded that Plaintiff has the following severe impairments: "major depressive disorder and anxiety disorder, NOS." (Tr. 15).

12

considered the GAF ratings assigned to Plaintiff by Dr. Post and Dr. Campbell-Flint, which were both consistent with a finding of only moderate symptoms. (Tr. 19, 199-201, 212, 216, 278).

The ALJ attributed great weight to the opinion of Dr. Campbell-Flint, as he found the opinion to be "consistent with the record of as a whole." (Tr. 19). Plaintiff argues, however, that he is not capable of the RFC in large part because of certain findings in Dr. Campbell-Flint's August 2010 examination report. (R. Doc. 10 at 7-8). These specific findings include statements that Plaintiff could have difficulties "during episodes of depression or psychosis." (Tr. 201). There is no evidence in the record, however, that Plaintiff suffered from extreme symptoms during the time period at issue for the RFC determination. Dr. Campbell-Flint also provided that Plaintiff's "concentration was normal through the evaluation process" and that Plaintiff "was able to understand and [follow] directions." (Tr. 201). Dr. Campbell-Flint's overall analysis and conclusions provides substantial evidence in support of the ALJ's RFC determination. (Tr. 199-201).

Finally, Plaintiff suggests that the ALJ's RFC determination was in error because it did not consider whether Plaintiff could maintain employment based on the RFC over an extended period of time. Plaintiff relies on the assumption that he will exhibit extreme symptoms at some point in his employment. As discussed above, the ALJ determined that Plaintiff only suffered from moderate impairments and was capable of work consistent with the RFC. Plaintiff's hypotheticals assume evidentiary findings that the ALJ did not make. For example, Plaintiff relies on VE Majors' testimony that a person who was "severely depressed with psychotic behavior" would not be able to work and should be found disabled. (Tr. 55-56). This testimony, however, was in response to a hypothetical posed by Plaintiff's counsel. Because the court finds

that the ALJ's RFC determination is supported by substantial evidence, hypothetical questions to the VE that imposed restrictions beyond that RFC need not be considered.

## VI. RECOMMENDATION

For the reasons assigned above, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 7, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**